2026 IL App (2d) 240527-U
No. 2-24-0527
Order filed July 27, 2026

**NOTICE:** This order was filed under Illinois Supreme Court Rule 23(b) and is not precedential except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,

v.

JUAN CALDERON, Defendant-Appellant.

Appeal from the Circuit Court of Kane County.
Honorable Alice C. Tracy, Judge, Presiding.
No. 14-CF-258

JUSTICE McLAREN delivered the judgment of the court.
Justices Birkett and Mullen concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court did not err in denying defendant's motion to file a successive postconviction petition alleging that his trial counsel was ineffective for failing to introduce surveillance videos that were allegedly exculpatory as to defendant's sex-crime charges. Defendant did not establish cause for failing to include the ineffectiveness claim in his initial petition, as he was negligent for relying on a fellow inmate to prepare the petition. Nor did defendant establish prejudice from the omitted claim, given the strength of the trial evidence and his failure to include the videos with his proposed successive petition.

¶ 2    Defendant, Juan Calderon, appeals from an order of the circuit court of Kane County denying his motion for leave to file a successive petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)). We affirm.

¶ 3                                 I. BACKGROUND

¶ 4     Following a jury trial in the circuit court of Kane County, defendant was convicted of two counts of aggravated criminal sexual assault (720 ILCS 5/11-1.30(a)(2) (West 2014)). The trial court sentenced defendant to an eight-year prison term for each count and ordered that the sentences be served consecutively. At trial, M.C. testified that she married defendant in September 2013. By February 2014, the marriage was troubled. M.C. arranged to meet defendant on February 15, 2014, to tell him that she wanted a divorce. She went in her pickup truck to a convenience store to meet with defendant. Defendant got into the passenger seat, and they proceeded to a liquor store, where defendant purchased alcohol. Defendant then took over driving, and they traveled to a park. When they arrived, they began arguing. Defendant was drinking. He forced M.C. to perform oral sex on him. Afterward, defendant drove from the park to a gas station. As he was driving, he forced M.C. to perform oral sex on him again.

¶ 5     At some point after they arrived at the gas station, defendant hit M.C. in the mouth with his hand. M.C. asked defendant to calm down, but he started hitting her face with his closed fist. When M.C. tried to push defendant away, he bit her arm. He also choked her, preventing her from breathing. When M.C. tried to open the passenger door, defendant grabbed the back of her pants, pulled them partly down, and inserted his fingers into her rectum. He also penetrated her vagina with one or more of his fingers. Ultimately, M.C. was able to escape from the truck, and someone escorted her into the gas station, where she received assistance.

¶ 6     Thomas Burke testified that at about 7 p.m. on February 15, 2014, while at a Marathon gas station in South Elgin, he encountered a woman crying in the parking lot. When he approached her, he noticed that her face was bruised. After she said that she had been hit, Burke brought her into the gas station, where the clerks contacted 911. Once inside, the woman continued to discuss

the incident. According to Burke, "She said she had been hit or beat up and that the person had bit her. She didn't say who it was. She said 'him,' and she pointed out towards the outside[.]" Burke testified that the woman pointed at defendant. She told Burke that defendant had her keys. Not wanting defendant to leave, Burke went out to confront him. Defendant had an odor of alcohol. He did not appear to have been injured. Burke retrieved the woman's keys from defendant. Shortly thereafter, the police arrived.

¶ 7    Two days after the incident, defendant wrote a letter to M.C.'s adult daughter. The letter was in Spanish, and the court interpreter translated it for the jury. Defendant expressed regret for " 'what happened' " between defendant and M.C. Defendant wrote, " 'I want the earth to swallow me up, and I cannot find any word to explain what happened.' " Defendant indicated that he knew M.C. was " 'very hurt,' " adding, " 'I know that there is no justification, but I swear to you that I was just very drunk and [M.C.] knows that.' " Defendant asked for "an infinite amount of forgiveness."

¶ 8    Brian Polkinghorn, a detective with the South Elgin Police Department, testified that he investigated the incident at the Marathon gas station. In the early morning hours of February 16, 2014, Polkinghorn interviewed defendant. Defendant told him that, the prior evening, he and M.C. argued, M.C. hit him, and he "defended himself." However, he denied hitting M.C. Initially, he denied having any sexual contact with M.C. in the truck, but he later stated that he touched M.C.'s vagina and she touched his penis and performed oral sex on him.

¶ 9    Called as a witness for the defense, Polkinghorn testified that, in connection with his investigation, he asked M.C. why she had stepped out of her truck two or three times. He explained that he asked the question because he had seen her do so on surveillance video from the gas station.

¶ 10 On direct appeal from his conviction, defendant argued that (1) the prosecutor's rebuttal argument was inflammatory; (2) the evidence supported convictions of criminal sexual assault but not aggravated criminal sexual assault; and (3) the convictions of two counts of aggravated criminal sexual assault violated the one-act, one-crime rule. *People v. Calderon*, 2018 IL App (2d) 160185-U, ¶ 2. We affirmed.

¶ 11 On July 26, 2019, defendant filed a petition for relief under the Act, alleging various instances of ineffective assistance of trial counsel and appellate counsel. The petition included no claims related to trial counsel's failure to offer exculpatory surveillance videos into evidence. The trial court summarily dismissed the petition, and we affirmed. *People v. Calderon*, 2022 IL App (2d) 190968-U, ¶ 2.

¶ 12 On October 17, 2022, defendant filed a motion for leave to file a successive postconviction petition. Defendant asserted that, while incarcerated, he sought assistance with the preparation of his initial postconviction petition from the law librarian at his correctional facility. Defendant alleged that the librarian "hire[d] and supervise[d] various prisoner-workers" who worked in the law library. The law librarian "pushed [defendant] off to his prisoner-workers." Those inmates refused to assist defendant unless he paid them. Frederick Lambert, one of the inmates who worked in the law library, approached defendant and offered to prepare defendant's postconviction petition for $400. Lambert claimed that he was a "licensed paralegal." Defendant accepted Lambert's offer. Lambert did not speak Spanish. Defendant, a Spanish speaker, had a poor command of English.

¶ 13 Defendant alleged that he wanted his postconviction petition to raise a claim of ineffective assistance of trial counsel based on counsel's failure to present surveillance videos from the gas station that allegedly contradicted M.C.'s testimony. According to defendant, when Lambert

completed the initial petition, defendant "questioned Lambert about the video evidence not being included, and Lambert responded that it would be requested by the judge."

¶ 14 The petition accompanying the motion included what defendant referred to as an "offer of proof" of the contents of surveillance videos from three cameras at the gas station, one of which defendant allegedly viewed with trial counsel. That video purportedly showed M.C. calmly exit the pickup truck, walk to the driver's side, and then calmly return to the passenger seat. She repeated this movement two more times. She was fully dressed on each occasion. Finally, she exited the truck, still fully dressed, and calmly walked out of the surveillance camera's view. The other videos also purportedly contradicted M.C.'s account of the incident.

¶ 15 Defendant attached to his petition a "Statement of Juan Carlos Calderon Supporting Successive Petition for Post Conviction Relief" (Statement). The Statement, which was notarized, reiterated the petition's description of the surveillance videos.

¶ 16 On August 7, 2024, the trial court denied defendant's motion. The court determined that defendant did not establish "cause" for failing to include in his initial petition a claim that trial counsel was ineffective for failing to introduce the surveillance videos into evidence. See 725 ILCS 5/122-1(f) (West 2020). Having found a lack of "cause" for the omission of the ineffectiveness claim, the court declined to consider whether the omission caused defendant "prejudice." See *id.*

¶ 17 This timely appeal followed.

¶ 18                                   II. ANALYSIS

¶ 19 Defendant argues that he met the "cause" and "prejudice" requirements for filing a successive postconviction petition alleging that trial counsel was ineffective for failing to introduce the surveillance videos into evidence.

¶ 20 The Act "provides a remedy to a criminal defendant whose federal or state constitutional rights were substantially violated in [the] original trial or sentencing hearing." *People v. Pitsonbarger*, 205 Ill. 2d 444, 455 (2002). Proceedings under the Act are divided into three stages. *People v. Janusz*, 2024 IL App (2d) 220348, ¶ 21. At the first stage, the trial court independently reviews the petition and, under section 122-2.1(a)(2) of the Act (725 ILCS 5/122-2.1(a)(2) (West 2020)), must dismiss the petition if it is frivolous or patently without merit, *i.e.*, if it has no arguable basis in fact or law. *Janusz*, 2024 IL App (2d) 220348, ¶ 21. Section 122-2 of the Act (725 ILCS 5/122-2 (West 2020)) provides that the petition "shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." The failure to comply with this requirement is grounds for summary dismissal of the petition. *People v. Delton*, 227 Ill. 2d 247, 254-55 (2008).

¶ 21 It is well established that "[t]he Act contemplates the filing of only a single petition." *People v. Jackson*, 2021 IL 124818, ¶ 27. The Act requires leave of court for filing a successive petition. 725 ILCS 5/122-1(f) (West 2020). Section 122-1(f) of the Act (*id.*) provides, in pertinent part:

> "Leave of court may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure. For purposes of this subsection (f): (1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process."

¶ 22    The defendant has the burden of making a *prima facie* showing of cause and prejudice to justify filing a successive petition.  See *People v. Bailey*, 2017 IL 121450, ¶¶ 48-49.  As our supreme court has explained, "To meet the cause-and-prejudice test for a successive petition requires the defendant to 'submit enough in the way of documentation to allow a circuit court to make that determination.' " *People v. Smith*, 2014 IL 115946, ¶ 35 (quoting *People v. Tidwell*, 236 Ill. 2d 150, 161 (2010)).  Furthermore, because "the cause-and-prejudice test for a successive petition involves a higher standard than the first-stage frivolous or patently without merit standard that is set forth in section 122-2.1(a)(2) of the Act" (*id.* ¶ 35), a defendant cannot show prejudice based on the failure to raise a claim in the initial petition if the claim would have been summarily dismissed had it been raised.  We review *de novo* the denial of leave to file a successive petition alleging cause and prejudice.  *People v. Robinson*, 2020 IL 123849, ¶ 39.

¶ 23    Whether there is cause for defendant's failure to bring the surveillance-video claim in his initial petition hinges on whether he established "an objective factor" based on his alleged reliance on Lambert's representations about his qualifications and his reassurances that the trial court would consider the surveillance videos despite the failure to include them with the petition.  Defendant cites no case in which the acts or omissions of a non-attorney assisting a postconviction defendant have been deemed cause for a successive petition.  However, defendant contends that a case that rejected such an argument—*People v. Williams*, 394 Ill. App. 3d 236 (2009)—is "instructive." Interestingly, it was Lambert who assisted the defendant in *Williams* with his initial postconviction petition.  *Id.* at 241.

¶ 24    The defendant in *Williams* contended that he had cause for filing a successive petition because Lambert did not raise certain issues in the initial postconviction petition.  *Id.* at 244.  The successive petition was accompanied by an affidavit from Lambert, who stated that he omitted the

issues because he was "not getting along" with the defendant and he believed that if he did just enough to " 'get by,' " the defendant would not notice that the issues had been omitted. *Id.* at 241. In rejecting the defendant's argument that he had shown cause for filing a successive petition, the *Williams* court relied on *People v. Lander*, 215 Ill. 2d 577 (2005), which dealt not with the issue of cause for filing a successive petition, but rather with the applicability of a provision of the Act excusing a defendant's failure to timely file a postconviction petition if the failure is not due to the defendant's culpable negligence. *Id.* at 586 (citing 725 ILCS 5/122-1(c) (West 2000)).

¶ 25    In *Lander*, the defendant blamed his untimely petition on several individuals at his correctional facility—" 'jailhouse lawyers,' " a "law clerk," and a " 'librarian or paralegal' "— who allegedly misinformed him of the filing deadline for the petition. *Id.* at 587. The defendant relied on *People v. Rissley*, 206 Ill. 2d 403, 421 (2003), which held that the defendant's reliance on his direct appeal counsel's advice about his postconviction petition's due date was not culpably negligent. The *Rissley* court explained that "[the] [d]efendant's conduct cannot fairly be labeled blamable or censorious, nor can it be said that [the] defendant's actions evince an indifference to the consequences." *Id.* The defendant "remained in constant contact with his direct appeal counsel, whose advice and interpretation of the statute [the] defendant had no reason to question." *Id.* However, the *Lander* court concluded that *Rissley*'s reasoning did not apply to reliance on "jailhouse lawyers, a prison law clerk, [or] a law librarian or paralegal," absent an allegation that those individuals "had any particular training in postconviction matters providing them with specialized knowledge of the filing deadline for a postconviction petition." *Lander*, 215 Ill. 2d at 588.

¶ 26    Informed by these decisions, the *Williams* court held that the defendant's reliance on Lambert to draft his initial petition was not cause for failure to raise the omitted issues. *Williams*, 394 Ill. App. 3d at 245. The court reasoned as follows:

> "While the defendant alleges that he relied on Mr. Lambert to raise the claims in his original petition that he now seeks to raise in his subsequent petition, there are no allegations as to any expertise Mr. Lambert possessed in postconviction matters. Moreover, Mr. Lambert stated in his affidavit that he did not raise [certain] claims ***, despite the fact that the defendant had told Mr. Lambert that he wanted [them] raised. The original postconviction petition states that it was 'prepared and argued by' Mr. Lambert. However, the petition is signed by the defendant. While Mr. Lambert averred that the defendant would not discover or know the difference, he did not state that he prevented the defendant from reading the petition or that he told the defendant that the petition contained all the claims the defendant wished raised. Likewise, the defendant did not allege that he did not read or was prevented from reading the petition, at which point he would have discovered that Mr. Lambert did not raise all of the claims as the defendant had instructed." *Id.*

¶ 27    Defendant argues that a different result is called for here because Lambert claimed to be a licensed paralegal, defendant paid him to prepare the petition, and defendant "lacked sufficient English skills to prepare the petition on his own or comprehend complex legal terminology." We disagree. By drawing analogy to *Lander*—which involved the question of whether failure to timely file a postconviction petition was culpably negligent—*Williams* implicitly held that cause for raising a claim in a successive petition does not exist if the failure to raise the claim was due to the defendant's culpable negligence. Here, the implicit premise of defendant's argument is that,

unlike in *Williams*, his reliance on Lambert was *not* culpably negligent. However, we would fall prey to a logical fallacy if we simply inverted *Williams*'s reasoning to hold that cause necessarily exists in the absence of culpable negligence.[1]

¶ 28      In the present case, even if defendant's reliance on Lambert's assurances was not culpably negligent, defendant was guilty of at least simple negligence—by which we mean the failure to exercise due care—unless he confirmed Lambert's credentials or there were circumstances otherwise establishing that it was reasonable to entrust Lambert with the task of preparing the postconviction petition. See *Lander*, 215 Ill. 2d at 587 (culpable negligence is more serious than ordinary negligence and is akin to recklessness); *People v. LaPointe*, 365 Ill. App. 3d 914, 925 (2006) (the defendant's reliance "on the legal advice of a prison law clerk, with no apparent expertise in the area of post-conviction procedure," was not cause under section 122-1(f) of the Act). However, defendant alleges nothing to suggest that his reliance on Lambert was based on anything other than his credulous acceptance of Lambert's claim that he was a "licensed" paralegal. We note that Illinois does not license paralegals, and, by definition, paralegals work under the direction of attorneys (see 5 ILCS 70/1.35 (West 2020)). Defendant did not allege that Lambert worked under the direction of attorneys, much less that such supervision could have extended to a "side" agreement to prepare defendant's petition in exchange for personal remuneration. To the extent defendant claims "subjective ignorance" of Illinois requirements regarding paralegals, such ignorance is no excuse. See *People v. Evans*, 2013 IL 113471, ¶ 13.

---

[1]The fallacy is known as "denying the antecedent." See generally Stephen M. Rice, *Conventional Logic: Using the Logical Fallacy of Denying the Antecedent as a Litigation Tool*, 79 Miss. L. J. 669, 677-82 (2010).

¶ 29    The question then (which *Williams* does not address) is whether defendant's negligence in entrusting preparation of his initial postconviction petition to Lambert negates the existence of cause. We conclude that it does. Cause depends on the existence of "an objective factor that impeded [the defendant's] ability to raise a specific claim during his or her initial post-conviction proceedings." 725 ILCS 5/122-1(f) (West 2020). "An 'objective' impediment is one that is 'external to the defense.' " *People v. Brandon*, 2021 IL App (1st) 172411, ¶ 45 (quoting *Pitsonbarger*, 205 Ill. 2d at 462). A *pro se* petitioner's negligent decisions are in no sense external to the defense but rather lie at the very core of the defense. We must stress, however, that the inverse is not *necessarily* true; we express no opinion on whether the omission of a claim from a petition drafted by one inmate for another is external to the defense when the latter exercised due care in choosing the former to do so.

¶ 30    Even if defendant had shown cause for the omission of the claim in question, he nonetheless failed to show prejudice. In assessing prejudice, we must consider the strength of the evidence against defendant, which, in this case, includes defendant's own letter expressing remorse for his conduct and thereby reflecting consciousness of his guilt. More importantly, the surveillance videos on which defendant's claim is based are not part of the record, and the only indication of what the videos show is found in the petition's allegations and defendant's attached, notarized Statement. We construe the latter as an affidavit. However, it does not qualify under section 122-2 as corroboration of the petition's allegations about the surveillance videos. A defendant cannot meet section 122-2's requirement by simply " 'transcribing the allegations in [the] petition into another document called an affidavit.' " *People v. Hunt*, 2023 IL App (2d) 220153, ¶ 23 (quoting *People v. Moore*, 2022 IL App (1st) 192290, ¶ 27). Not only did defendant fail to provide adequate corroboration for his allegations about the surveillance videos, he also failed to indicate what effort

he made to obtain such support. Thus, had defendant raised the claim in his initial postconviction petition, it would have been subject to summary dismissal due to the unexplained absence of affidavits or other evidence supporting its allegations. As noted, the failure to raise a claim in an initial postconviction petition cannot satisfy the prejudice requirement if the claim would have been summarily dismissed. See *Smith*, 2014 IL 115946, ¶ 35.

¶ 31     That defendant's petition designated the unsupported allegations as an "offer of proof" does not change this result. The purpose of an offer of proof is to make a record for a reviewing court to determine the admissibility of evidence excluded by the trial court and to gauge the harm from its exclusion. See *Pardilla v. Village of Hoffman Estates*, 2023 IL App (1st) 211580, ¶ 43. Here, the trial court did not exclude from defendant's successive petition any evidence of the contents of the surveillance videos. Rather, defendant simply failed to provide any such evidence. Defendant cannot circumvent the requirement of substantiating the allegations of his petition (or explaining his failure to do so) by inaccurately framing the allegations as an offer of proof.

¶ 32                                III. CONCLUSION

¶ 33     For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 34     Affirmed.